36 577
74 503

## CITY OF HELENA v. TURNER ET AL.

1. SCRIP, CITY: *Not good to city on special contracts for currency.*
   Where an obligation executed to a town or city expresses that it is to be paid in United States currency, and it is manifest that it was the intention of the parties that money, and not scrip of the town or city, should be paid, a tender in scrip is not good. The act of December 17, 1873, providing that city warrants, etc., should be receivable for all debts due the corporation by which they were issued, may apply to debts and obligations generally, but does not forbid corporations from contracting specially for payment in money.

2. ESTOPPEL: *Lessee of corporation estopped, etc.*
   The lessee of a municipal corporation, of public grounds, is estopped, after full enjoyment of his lease, to deny the right or power of the corporation to make the lease.

APPEAL from *Phillips* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

### REPORTER'S STATEMENT.

This was an action in the circuit court of Phillips county, by the city of Helena against the defendants, upon a bond executed by them on the ninth day of February, 1877, to the mayor and council of the city, for the payment of $1,300 in United States currency, on the first day of November, 1877, for a lease for one year, of the exclusive forwarding and shipping privilege from and to certain lots of the city fronting on the river. The complaint alleged that the bond was made for the benefit of the city, and belonged to it, and that payment in United States currency was expressed in the bond to preclude payment in depreciated city scrip.

The defendants answered in two paragraphs: In the first admitting the execution of the bond, but asserting the

37—36

right to pay in anything which might be a lawful payment to the city, and that after the execution and maturity of the bond, the mayor and city council had, by resolution duly passed, remitted and released to the defendants the sum of $400, and they had paid the sum of $223; and, before the institution of the suit, had tendered to the plaintiff, in warrants duly issued by the city, the sum of $675, and all interest due, and the same was refused; and they renewed the tender in court.

The second paragraph set up that the property for the lease of which the bond was given, was public property, dedicated to public uses exclusively, and the plaintiff had no right or authority to lease it to the defendants, and the lease did not grant to them any privileges not enjoyed by the public, and that the bond was without consideration, and void.

The plaintiff demurred to each paragraph of the answer, but the demurrer was overruled; and plaintiff then filed an amendment to the complaint, stating, in substance, that the defendants had entered under the lease, and enjoyed the possession and profits for the full term, without molestation, etc., and were estopped to deny the plaintiff's authority to make the lease.   The amendment was, on motion of the defendants, stricken out by the court.

Upon the trial, the plaintiff read in evidence the bond sued on, and the deed of J. M. Hanks and wife, conveying the property, in the usual terms, to the city, to be "held, used and enjoyed by said city or her assigns, solely and exclusively for the use and benefit of the public as a public square, or wharf;" and he offered to read the lease of the same date as the bond, leasing the property to the defendants for the sum of $1,300, to be paid in United States currency, for the exclusive privilege of a wharf, as stated in the bond.   But the court refused to allow it to be read.

City of Helena v. Turner et al.

The plaintiff asked the court to instruct the jury, in substance, "that if they found that the defendants leased the property from the plaintiff, and enjoyed the full use and benefit of it, for the full term of the lease, without let or hindrance, they were estopped from pleading want or failure of consideration;" which the court refused; and instructed the jury, that the deed from Hanks and wife "amounts to a dedication for public uses, and the property so dedicated can not be leased by the city for private purposes, and if the jury find this was done in this case, they must find for the defendants."

The jury found for the defendants, and there was judgment accordingly. The plaintiff moved for a new trial, which being overruled, he filed a bill of exceptions and appealed.

*Thweatt*, for appellant:

The tender made by defendants constitutes no defense. *Par. on Con., Vol. II, pp.* 148, 157 ; *Day v. Lafferty,* 4 *Ark.,* 150 ; *Thurston et al. v. Peay, Receiver,* 21 *Ark.,* 85. The act of December 14, 1875, does not take from the city general power to contract for payment in anything upon which parties may agree.

The second paragraph of the answer was demurrable. See *Newman on Pl. & Pr., pp.* 540, 512. Defendants could only avail themselves of the same defenses open to Bart. Y. Turner. *De Col. on Guaranty, P. & Surety, p.* 2, *note, and p.* 141; *Parsons on Const., Vol. II, p.* 3; *Bigelow on Estoppel,* 327, 384, 446, 467 ; *Earle's Adm'r v. Hale's Adm'r,* 31 *Ark.,* 470 ; 1 *Wash. on Real Property, pp.* 484, 386, 487, and 492, *sec.* 10 ; *Taylor on L. & Tenant, secs.* 629, 705, 706; *Dillon on Mun. Corp.,* 435, *and note.*

The amendment to complaint should not have been

City of Helena v. Turner et al.

struck out. *Newman on Pl. & Pr., pp.* 667, 692, 699, 700, 705, 707, 708; also, *Bliss on Code Pleading*, 420, 430.

Deed of Hanks and wife was not a dedication of the property to the city. *Sec.* 7, *p.* 6, *of Acts of* 1874–5.

In support of tenth cause assigned for new trial, refer to *De Colyar on G. & P. & Surety, p.* 211, *et seq.* As to eleventh cause, *Dillon on Municip. Corp., p.* 430, *sec.* 445, *et seq;* also, 8 *Leigh* (*Va.*), *cited by Dillon.*

The city had power to lease. 1 *Dillon on Mun. Corp., p.* 117, *sec.* 67, *note* 3; 121, *sec.* 74, *note* 2; also, *p.* 440; 32 *Iowa*, 80; 10 *Barb.*, 360, 26; 2 *Hun.*, 146; *Dillon on Mun. Corp., secs.* 433–4, 445 *and* 511, *and cases and notes;* 31 *Ark.*, 462; 20 *Wall.*, 399; *Reporter, Vol. VII, p.* 583.

*Tappan & Horner*, for appellee:

Contended that the sureties on the bond were bound only by that, and not by any estoppel springing from the relation of landlord and tenant. The tender was good under act of December 14, 1875.

The city held the property in trust for the public, and could not lease it. *Dillon on Mun. Corp., secs.* 508–9.

EAKIN, J. Defendants are the principals and sureties in a bond, given to the city to secure the payment of rent for the privilege of keeping a wharf, and occupying, for the purpose, the river-front of a piece of land belonging to the corporation.

The first paragraph of their answer set forth a release of part, payment of part, and for the balance a tender of city warrants, duly issued, with an offer to bring them into court. This paragraph was not demurrable, as it did show some good matter of defense, in the release and part payment. The tender was not strictly, well pleaded; principally, for lack of the "*tout temps prist*" clause. The real

contest, however, on this point is, whether the rent could be paid in city warrants, or must be paid in money. The lease itself stipulated for the sum of $1,300, "in *United States currency*," to be paid on the first of November, 1877. The bond upon which suit is brought, is for the same amount, "in United States currency," to be void if the lessees of the wharf shall well and truly pay the rents reserved in the lease. The bond is a separate instrument, but evidently made with reference to the lease; and, construed together, they leave no doubt of an intention on the part of the city to demand, of the lessees to pay, and of the sureties to secure the payment of the rents in *currency*, as distinct from city warrants.

"An act to prevent discrimination in county warrants or county scrip," passed December 14, 1875, provided that all city warrants, etc., should be receivable for all debts due the corporation, "by whom the same were issued," without regard to the time or date of issuance. There is nothing in this act to forbid contracts with corporations for payment in money specially, although it may apply to debts and obligations generally. Persons may contract for anything legal, and not against good morals or public policy. It is a question of construction.

But for the existence of the law in question, the addition of the words, "in United States currency," would have had no significance. All contracts to pay mean that. It goes without saying. The use of the words, in connection with the law, shows a design to put the contract of leasing upon a footing different from that upon which the law would leave it. Corporations, like individuals, however deeply in debt, must have some actual money-income, to exist. The court erred in so far as it considered the plea of the tender a good defense.

The second paragraph, as a defectively-pleaded sugges-

tion of no consideration, should have been made more definite and certain. It is too general, but that is not curable by demurrer.

**2. Estop-**
**pel:**
**Lessee of** The principal question which underlies all the objections
**corpora-** and exceptions to the rulings of the court, arises from this:
**tion es-** that, throughout, the defendants squarely contend, and are
**topped to**
**deny title.** supported by the court in the position, that the land and river-front, being dedicated to the public, could not be leased by the city for private uses; that the contract was void, and there was no obligation on the principal or sureties to pay anything.

The evidence shows that defendants, the lessees, paid part of the rent, entered under the city, and were not molested in the enjoyment of the premises in any manner during the term.

We do not conceive it at all important to determine whether the city, holding the legal title of the property for public uses, ought to have leased it to defendants for their private emolument. There might be valid reasons for supposing that it could be best made to subserve the public convenience, by placing it in the hands of lessees, who would be interested to keep it in order for shipping purposes. However that may be, the public, or any citizen aggrieved, or molested in his enjoyment of the common property, might have found his appropriate remedy in chancery, if entitled to any. The defendants are estopped from denying the right under which they have been permitted to occupy, and of which they have availed themselves profitably. Certainly the city had control of it for the purpose contemplated by the conveyance, and for police purposes; and, holding the legal title, might, but for the contract, have dispossessed the defendants at any time, as being themselves guilty of a nuisance.

We know of nothing peculiar in the nature of municipal

corporations, to require, against them, any modification of the rule which prevents the tenant from denying his landlord's title.

The court erred in its instructions throughout, upon this point.

The amendment to the complaint, set up the fact that the lessees entered under the lease, and quietly enjoyed it. It was permissible to the plaintiff to assume, in the first instance, the burden of this proof, although not essential to show cause of action on the bond. If the lessees had been evicted, or impeded in their enjoyment, it was matter of defense, and, upon an issue thus made, plaintiff would have been allowed to prove the contrary. So, too, against a plea of want of authority to make the lease, it might have introduced the same proof to show estoppel. No injury was done to plaintiff by striking it out. It was not apparently an effort to join a count for use and occupation, but an attempt to anticipate and neutralize matter of defense.

For error in refusing the motion for a new trial, reverse the judgment, and remand the cause for further proceedings.